NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0415n.06

No. 23-3284

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 28, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JENNY L. ADAMS, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | OHIO |
| Defendant-Appellee. | ) | |
| | ) | OPINION |

Before: BATCHELDER, GRIFFIN, and BLOOMEKATZ, Circuit Judges.

PER CURIAM. Jenny L. Adams, through counsel, appeals the district court's judgment affirming the Commissioner of Social Security's decision denying her application for a period of disability and disability insurance benefits. We affirm for the reasons that follow.

In August 2019, Adams protectively filed an application for a period of disability and disability-insurance benefits based in part on degenerative disc disease of the cervical, thoracic, and lumbar spine. Following an evidentiary hearing, an administrative law judge (ALJ) determined that Adams was not disabled under the Social Security regulations. The ALJ found that Adams had the residual functional capacity (RFC) to perform her past relevant work as an administrative clerk, which is generally performed at a light level of exertion. Alternatively, the ALJ found that Adams had the RFC to perform other light-exertion jobs that existed in significant numbers in the national economy, such as mail clerk, information clerk, and office helper.

In developing Adams's physical RFC, the ALJ found unpersuasive three opinions submitted by Adams's treating physician, Dr. Kevin Hopkins. The first opinion was a check-box

form in which Dr. Hopkins indicated that, due to constant, chronic neck pain, Adams was limited to occasionally lifting and carrying less than 10 pounds, standing two hours in an eight-hour workday, and sitting less than six hours in an eight-hour workday. Dr. Hopkins's second opinion stated that, due to spondylosis of the cervical spine, Adams would be off-task at least 15% of the time during a normal workday and that, due to pain, she would be unable to sit or stand for more than 30 minutes at a time. Dr. Hopkin's third opinion stated that Adams would be off-task 15% of the workday and that she would be unable to perform any full-time occupation and would miss at least two days of work per month. Additionally, Dr. Hopkins adopted the results of a functional-capacity evaluation (FCE) that the Cleveland Clinic performed for Adams. That FCE concluded that Adams could work for only four to five hours per day and that she was limited to one to two hours of sitting and standing in 20-to-25-minute intervals. According to the vocational expert's hearing testimony, these functional limitations would preclude Adams from performing the jobs the ALJ cited.

But the ALJ found that Dr. Hopkins's opinions, as well as the FCE, were not supported by objective findings and were inconsistent with the medical evidence as a whole. The ALJ based that finding on treatment records showing that, despite chronic neck pain, Adams demonstrated largely normal strength, sensation, reflexes, and gait. In addition, the ALJ cited imagery showing only mild impairments and a course of conservative treatment for her spinal impairments. According to the ALJ, these treatment records were at odds with the sitting, standing, off-task, and absenteeism limitations indicated by Dr. Hopkins.

The Appeals Council denied Adams's request to review the ALJ's decision. Adams then filed a timely complaint for judicial review of the Commissioner's decision, alleging that substantial evidence did not support the ALJ's determination that Dr. Hopkins's opinions and the

Cleveland Clinic's FCE were unpersuasive. More specifically, Adams asserted that the FCE was entitled to significant weight because the examiners applied the allegedly objective "Key Method" in reaching their conclusions. Further, Adams argued that the ALJ's reasons for rejecting the FCE and Dr. Hopkins's opinions were vague and not supported by specific citations to the record. Over Adams's objections, the district court adopted a magistrate judge's report and recommendation that concluded that the ALJ sufficiently explained her reasoning and that her conclusions had substantial support in the record. Accordingly, the district court affirmed the ALJ's decision.

Adams raises the same arguments on appeal, although she now contends that the ALJ erred by attempting to "invalidate" the allegedly objective FCE. In support, Adams cites *Hargett v. Commissioner of Social Security*, 964 F.3d 546, 554 (6th Cir. 2020), which she contends stands for the proposition that, because an FCE is based on objective observations and criteria, an ALJ lacks the medical expertise to reject its conclusions. Further, Adams argues that the ALJ "cherry picked" the record by ignoring evidence that supported her application.

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence exists "if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Id.* at 406 (internal quotation marks omitted). We review de novo the district court's conclusions on each issue. *Id.*

The Social Security Administration (SSA) adopted new regulations for evaluating medical opinions and prior administrative medical findings that became effective on March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Adams filed her application for disability-insurance benefits after that date, the new regulations apply.

Under the new regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). In evaluating medical opinions and prior administrative medical findings, "[t]he most important factors . . . are supportability . . . and consistency." *Id.* The SSA will also consider the medical source's relationship to the claimant; the specialization, if any, of the medical source or prior administrative medical finding; and other factors, such as the medical source's familiarity with other evidence concerning the claim and the source's familiarity with the SSA's "policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The new regulation substantially reduces the ALJ's obligation to explain the basis for his or her assessment of medical opinions:

> Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1). Moreover, although the ALJ is required to explain how the supportability and consistency factors apply to medical-source evidence, she may, but is not required to, explain how she considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

Applying the new regulations, we conclude that substantial evidence supports the ALJ's determination that the FCE and Dr. Hopkins's disabling opinions were not persuasive.

Despite Adams's spinal impairments, none of Dr. Hopkins's contemporaneous treatment notes indicate that she had any significant sitting and standing limitations. Substantial evidence therefore supports the ALJ's conclusion that Dr. Hopkins's subsequent disabling opinions lacked support in the record. *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 584 (6th Cir. 2010)

(holding that the ALJ properly discredited the opinion of the claimant's treating physician because it was not supported by his office treatment notes). And in contrast to Dr. Hopkins, two state-agency medical consultants stated that Adams could sit and stand or walk for up to six hours in an eight-hour workday.

Adams's history of conservative treatment for back pain with epidural injections, medial-branch blocks, and prescription pain medication also supported the ALJ's determination that she did not have disabling limitations in sitting and standing. *See O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 417 (6th Cir. 2020) (collecting cases). The same is true of Adams's largely unremarkable physical examinations, in which she consistently displayed normal strength, reflexes, and gait. *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 400–01 (6th Cir. 2018).

Substantial evidence also supports the ALJ's determination that Dr. Hopkins's opinion that Adams would be off-task 15% of the time was not persuasive. First, Dr. Hopkins did not provide any basis for that conclusion or cite any medical evidence in support of it. Dr. Hopkins's conclusory opinion would not have been entitled to any weight even under the deferential treating-physician rule. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Second, that opinion was contrary to the opinion of a state-agency examining psychologist, who found that Adams's ability to maintain concentration, persistence, and pace was "more than adequate." As the ALJ found, this opinion "suggested that [Adams] could work consistently in a relatively stable work environment."

Adams's argument that the ALJ attempted to "invalidate" the Cleveland Clinic FCE and her suggestion that the ALJ was required to accept the limitations contained in the FCE because it was "objective" are without merit. First, the ALJ did not state anywhere in her decision that the

FCE was invalid. Rather, the ALJ simply found that the FCE's conclusions were unpersuasive. Second, once the claimant's application proceeds to an evidentiary hearing, responsibility for determining her RFC rests solely with the ALJ. *See* 20 C.F.R. § 404.1546(c); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). Consequently, the ALJ was not required to accept the FCE's findings merely because of its alleged objectivity.

In *Hargett*, the claimant's treating physician adopted the disabling results of the claimant's third-party FCE as his opinion of the claimant's functional limitations, *Hargett*, 964 F.4th at 549, but the ALJ gave only "partial weight" to it, *id.* at 550. Because the treating physician had adopted the FCE as his own opinion, we concluded that the treating-physician rule applied to the FCE and therefore that the ALJ was required to give "good reasons" for giving only partial weight to it. *Id.* at 553–54. We then found that the ALJ's conclusory statements for the weight given to the opinion did not satisfy the good-reasons rule. *Id.* And in the passage that Adams cites, we concluded that the ALJ's error was not harmless because the FCE was "based on objective observation and defined criteria." *Id.* at 554.

But *Hargett* does not apply to Adams's case. As indicated above, *Hargett* involved the treating-physician rule, which had been abrogated by the time Adams filed her application for disability benefits. Consequently, the ALJ was not required to give "good reasons" for not accepting the results of Adams's FCE. Rather, the ALJ was required to evaluate only whether the FCE had support in and was consistent with the record. *See* 20 C.F.R. § 404.1520c(a). The ALJ's decision adequately complied with this requirement. And in *Hargett*, our statement that the FCE was based on objective criteria came in the context of determining whether the ALJ's failure to give good reasons for rejecting the treating-physician's opinion was a harmless error. Nothing in

*Hargett* suggests that an ALJ is required to accept the conclusions of an allegedly objective FCE or that an ALJ needs medical credentials to find that an FCE's conclusions are unpersuasive.

Finally, we reject Adams's argument that the ALJ "cherry-picked" the record. To be sure, there was evidence in the record from which a reasonable person could conclude that Adams was disabled. But the relevant inquiry is whether substantial evidence supports the ALJ's decision. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004))). And as we have discussed, substantial evidence supports the ALJ's decision here.

For these reasons, we **AFFIRM** the district court's judgment.